IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DAN GOODRICK and JOSEPH PAUSCH, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. CV04-558-C-LMB |
| vs. | ) ) | **ORDER** |
| RALPH TOWNSEND, DWIGHT BOARD, CAROLYN MELINE, TOM BEAUCLAIR, WARDEN KEMPF, DEPUTY WARDEN CARROLL, DEPUTY WARDEN MACEACHERN, CAPT. SCHRIVER, SGT. ROAN, SGT. ERBST, SGT. BARNES, PAT DONALDSON, CHRIS MANFULL, DENNY SUMMERS, and DARCELL STAMMER, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Pending before the Court are Defendants' Motion for Protective Order (Docket No. 13), Plaintiffs' Motion to Compel (Docket No. 14), Plaintiffs' Motion for Summary Judgment (Docket No. 15), Plaintiffs' Motion for Preliminary Injunction (Docket No. 19), and Plaintiffs' Motion to Strike and Dismiss Defendants' Answer (Docket No. 21).

Having carefully reviewed the record, the Court has determined that a protective order will be issued regarding the discovery in this case. Plaintiffs' request for injunctive relief is partially granted, and their Motion for Summary Judgment will be denied.

**ORDER  1**

# I.

# BACKGROUND

Plaintiffs are inmates in the custody of the Idaho Department of Correction (IDOC).  At the time the allegations in the Complaint arose, they were incarcerated at the Idaho Correctional Institution - Orofino (ICIO) and were held in protective custody. Plaintiffs filed this lawsuit against Ralph Townsend, Dwight Board, Carolyn Meline, Tom Beauclair, Warden Kempf, Deputy Warden Carroll, Deputy Warden MacEachern, Captain Shriver, Lt. Unger, Lt. Thomason, Correctional Officer McKenzie, Correctional Officer Roane, Correctional Officer Erbst, Correctional Officer Barnes, Pat Donaldson, Chris Manfull, Denny Summers, John Erbst, Chaplain Polk, Rich Hull, Rich Davidson, and Darcell Stammer.

After the Court's initial review of the Complaint, Plaintiffs were authorized to proceed on the following alleged Eighth Amendment violations:  (1) the double-celling of protective custody inmates; (2) the inadequate ventilation system in protective custody units; (3) the assignment of dangerously mentally ill inmates to double cells in the protective custody unit; (4) the failure to adequately sanitize the protective custody inmates' clothing; (5) the failure to provide adequate cleaning supplies; (6) the inadequate plumbing in the protective custody units; (7) the failure to provide adequate outdoor exercise and access to the weight room for protective custody inmates; and (8) the inadequate cleaning supplies to sanitize eating utensils.

**ORDER  2**

## II.

## PENDING MOTIONS

### A. Discovery Motions

Defendants request a protective order, limiting the discovery requests Plaintiffs propounded. Federal Rule of Civil Procedure 26(b) allows "[p]arties [to] obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." The term "relevant" is further defined as information that is "reasonably calculated to lead to the discovery of admissible evidence," and it "need not be admissible at trial." Fed. R. Civ. P. 26 (b)(1). Although relevance has a broad meaning, district courts are given wide discretion to apply the discovery rules in a way that will achieve the policy of the Federal Rules of Civil Procedure; namely to "secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

During the discovery process, the Court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26 (c).

Defendants request a protective order for the following reasons: (1) many of Plaintiffs' document requests are actually interrogatories; (2) Plaintiff Goodrick and Plaintiff Pausch served discovery requests on each of the twenty-two Defendants in this action; (3) the volume of discovery requests is unduly burdensome on Defendants; and (4) Plaintiffs' attempts to gain access to the Defendants' personnel files and other personal information is designed to annoy and harass them.

**ORDER** 3

Defendants request that Plaintiffs be allowed to serve only one set of discovery on behalf of both of them.  Defendants also request that Plaintiffs' interrogatories and document requests be limited to one set for all Defendants.  In support of these requests, Defendants attached examples of Plaintiffs' numerous discovery requests to their motion.  It appears that many of the discovery requests are redundant in nature.

Plaintiff Goodrick filed a Motion to Compel responses from Defendants Beauclair, MacEachern, and King.  He claims that he does not have an obligation to meet and confer with Defendants' counsel regarding discovery disputes.  Attached to Plaintiffs' Motion are letters from Defendants' counsel, documenting the efforts to meet and confer on the discovery requests Plaintiff served on Defendants.  *Docket No. 14*, Exhibit A (letter sent one week after the requests were served, requesting that Plaintiff withdraw the interrogatories sent as document requests).  Plaintiff also attached a set of document requests that he sent to Defendant Beauclair.  *Id.* at Exhibit C.  Nineteen of the forty-three document requests are actually interrogatories, requesting that Defendant Beauclair provide the names of certain persons or business entities, and describe the contents of documents.

The Court authorized Plaintiffs to proceed with specific claims against twenty-two Defendants.  Therefore, it appears that Plaintiffs are taking advantage of this scenario to propound numerous, duplicative discovery requests.  Plaintiffs were unwilling to limit the discovery requests after Defendants' counsel attempted to confer with them on discovery

**ORDER  4**

issues, and, therefore, it appears that a protective order from the Court is the only way the parties will be able to complete discovery in this action.

The Court will limit the number of document requests and interrogatories that Plaintiffs can serve on Defendants in this action. Fed. R. Civ. P. 26 (b)(2) (the court may alter the limits on the number of interrogatories and document requests). Based on the complexity of the claims Plaintiffs are alleging, the Court will initially allow them to serve fifty (50) interrogatories total on Defendants. The Court will also allow the same number of total document requests to be served on Defendants. Once Plaintiffs have obtained the responses to these discovery requests, they may seek leave of Court to serve an additional set of discovery on Defendants, if necessary. Plaintiffs should attach the proposed additional set of discovery requests to the motion requesting leave for additional discovery.

In the event a disagreement arises about the responses to the initial set of discovery requests, the Court will order the parties to meet and confer on the disputed responses. The Court will only hear a motion to compel on these disputed issues after the parties have attempted to resolve the disputed discovery issues. Also, the Court is aware that Plaintiff Goodrick is without his typewriter at IMSI, and, therefore, he may send a copy of the original document request to Defendants' counsel with a line drawn through the deleted discovery requests. Plaintiffs may also cut and paste the original requests into a set of revised discovery requests. Defendants are directed to respond to document requests and interrogatories they receive in this form.

**ORDER  5**

The Court disagrees with Plaintiffs' assertion that Defendants have waived the right to object to discovery requests, and no sanctions will be ordered against Defendants. Defendants' objections to discovery based on security issues may be resolved through submission of redacted documents to the Plaintiffs, or Defendants may request that the Court review the complete set of documents *in camera*, after providing a privilege/security log to Plaintiffs.

Plaintiffs will not be allowed to review personnel files of IDOC employees. Neither will Defendants be required to provide personal information relating to family members. Plaintiff Goodrick has previously been advised of this prohibition on discovery from IDOC employees in his numerous other lawsuits filed in federal court, and, the continued persistence in requesting this information is viewed as a bad faith litigation tactic. Plaintiffs are advised to refrain from such conduct or risk imposition of sanctions.

Based on the foregoing, Defendants' Motion for Protective Order is granted as set forth above, and Plaintiffs' Motion to Compel is denied without prejudice to re-filing it.

### B. Motion for Summary Judgment

Plaintiffs also filed a Motion described as a request for summary judgment in this action. Plaintiffs allege that Defendants failed to file a timely Answer to the Complaint, and, therefore, they are entitled to an entry of judgment on all claims against Defendants. Plaintiffs also filed a Motion to Strike the Answer to the Complaint based on the same theory.

**ORDER  6**

The Court's Waiver of Service of Summons contained the incorrect deadline for filing an Answer. The Waiver states that an Answer is due sixty days after January 18, 2005. In fact the Answer is not due until sixty (60) days after the Waiver is returned to the Court. *See* Fed. R. Civ. P. 4 (d)(3)(a defendant that returns a waiver is not required to serve an answer to the complaint until 60 days after the date on which the request for waiver was sent).

When Defendants returned the Waiver, the Clerk of Court entered April 15, 2005 as the deadline for filing an Answer, thereby correcting the deadline. Defendants' Answer was filed on April 7, 2005. Therefore, there is no basis for Plaintiffs' request for entry of judgment against the Defendants in this action. Accordingly, Plaintiffs' Motion for Summary Judgment is without merit and is denied. Plaintiffs' Motion to Strike the Answer is also denied on the same basis.

### C. Motion for Preliminary Injunction

Plaintiffs filed a motion requesting an order enjoining IDOC employees, in particular Defendant Shedd, from retaliating against them. Defendants are allegedly retaliating against Plaintiffs by (1) impeding their access to the Court; (2) inspecting Plaintiff Goodrick's outgoing legal mail; and (3) requiring Plaintiff Pausch to pay for copies and postage fees for documents filed with the Court.

Plaintiff Goodrick was previously granted *in forma pauperis* filing status in this action. *See Docket No. 8.* The Court instructed Plaintiff Pausch to file an affidavit of indigency in the event he decided to pursue *in forma pauperis* filing status. As of this

**ORDER  7**

date, he has not submitted an application.  The Court directed the IDOC to deduct the filing fee from Plaintiff Goodrick's trust account.  *Docket No. 9*.  It does not appear that any payments have been made toward the filing fee.  Plaintiff Pausch claims that his inmate trust account is being charged for all copying costs associated with this case because he was not granted indigent filing status.  *Docket No. 19-2*, p. 1-2.

Plaintiff Goodrick alleges that Defendant Shedd, ICI-O paralegal, refused to copy a response to Defendants' Motion for Protective Order.  He alleges that the failure to provide a copy caused him to miss the filing deadline for the response.  Plaintiff Goodrick also claims that his legal mail to the Court is always inspected due to his indigent filing status, while Plaintiff Pausch's legal mail is not inspected.  *Docket No. 19*, p. 5.  The legal mail Plaintiffs are describing appears to be limited to Court filings.

The IDOC Directive No. 402.02.01.001, pertaining to institutional mail, states:

> Outgoing Confidential mail should be delivered to the mailroom sealed.  It will be opened and inspected only in the presence of the inmate.  All indigent Outgoing Confidential mail will be inspected prior to mailing by the paralegal.  Indigent inmates will have sufficient postage provided by the Department for Outgoing Confidential mail.

The term "Confidential mail" includes mail sent to the Court.  *Docket No. 23-2*, *Exhibit A*.

Defendants assert that there is a legitimate penological reason for inspecting only the indigent mail.  Indigent inmates allegedly try to send regular correspondence under the guise of Confidential mail, and, therefore, it is necessary for the resource center to

**ORDER  8**

inspect the indigent mail before it is sent to the Court. According to the IDOC Directive, the indigent Confidential mail is inspected within the presence of the inmate. *Docket No. 23*, p. 6.

Defendant Shedd allegedly requested that Plaintiff Pausch sign a withdrawal slip to cover the copying costs for the response to the Defendants' Motion for Protective Order. Plaintiff Goodrick took the position that his co-plaintiff should not be responsible for all of the copying costs in this action. Defendant Shedd allegedly refused to copy the response and retained the original for several days. *Docket No. 19*, p. 5. Defendant Shedd claims that the original was returned to Plaintiff Goodrick, and Defendants state that they will not oppose the late-filing of the response.

After Plaintiffs' Motion for Preliminary Injunction was filed, Plaintiff Goodrick was transferred to IMSI. *Docket No. 27*. As a result, the filings he makes with the Court are handled by the resource center at IMSI.

A Rule 65 preliminary injunction may be granted if the moving party satisfies one of two tests, designated as the "traditional standard" or the "alternative standard" of law. *International Jensen, Inc. v. Metrosound U.S.A., Inc*., 4 F.3d 819, 822 (9th Cir. 1993). The traditional standard requires a demonstration of the following elements: (1) that the moving party will suffer irreparable injury if the relief is denied; (2) that the moving party will probably prevail on the merits; (3) that the balance of potential harm favors the moving party; and (4) that the public interest favors granting relief. *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). Under the alternative standard, the moving party may

**ORDER  9**

meet its burden by demonstrating either: (1) a combination of probable success on the merits and the possibility of irreparable injury,[1] or (2) that serious questions are raised and the balance of hardships tips sharply in the movant's favor. *Benda v. Grand Lodge of Internat'l. Ass'n. of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978), *cert. dismissed*, 441 U.S. 937 (1979).

Where, as here, a party seeks a mandatory preliminary injunction, the court must deny such relief "unless the facts and law clearly favor the moving party." *See Stanley v. University of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (quotation and citation omitted); *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985) (because a preliminary injunction is an extraordinary remedy, it should not be granted routinely, but only when the plaintiff, by a clear showing, carries its burden of persuasion on each of the required elements).

Plaintiffs claim that Defendants are retaliating against them for filing the prison conditions claim. A retaliation claim must allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional

---

[1] An irreparable injury is defined as an actual and concrete harm, or the imminent threat of an actual and concrete harm. *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980). A threat of harm is not "imminent," if it is based upon remote possibilities or mere speculation. *Caribbean Marine Services Co. v. Baldrige*, 844 F.2d 668, 675 (9th Cir. 1988).

**ORDER 10**

goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). A "chilling effect on First Amendment rights" is enough to state an injury. *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001).

Plaintiffs request an order enjoining Defendants at ICI-O from interfering with their access to the Court. It appears that the response to the Motion for Protective Order was the only document Plaintiff Goodrick was allegedly prevented from filing. Plaintiffs were able to file a Motion to Compel, requesting an order that Defendants be compelled to answer discovery requests, a Motion for Summary Judgment, and a Motion to Strike. Based on the filings for the Defendants' Motion for Protective Order and Plaintiffs' Motion to Compel, the Court was able to adequately determine the discovery issues and create a discovery plan order. Therefore, it does not appear that any damage occurred from Defendant Shedd's alleged failure to make copies of the response. In the event Plaintiffs decide to file the response, the Court will review it as background for any future motion to compel discovery.

The Court also notes that Plaintiff Goodrick was transferred to IMSI, a correctional facility in Boise. Therefore, Defendant Shedd is no longer the paralegal through whom Plaintiff Goodrick must gain access to the prison resource center. A different IDOC paralegal will now be responsible for copying and mailing the pleadings in this action. In *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1990), the Ninth Circuit Court of Appeals decided that a plaintiff may not claim injunctive relief for his prison conditions claims if he has no reasonable expectation of returning to the facility in which

**ORDER 11**

the violations were occurring.  It does not appear that Plaintiff Goodrick will be returning to ICI-O in the near future.  Therefore, the Court is hopeful that the filing of documents through the IMSI paralegal will eliminate the alleged problems with Defendant Shedd.

The Court is concerned that Plaintiffs' ability to litigate the prison conditions case may be impeded due to Plaintiff Goodrick's transfer to IMSI.  Therefore, the Court will order that Defendants facilitate the exchange of documents between Plaintiffs' correctional facilities.  Defendants will also be required to provide copies of all documents relating to this litigation to both Plaintiffs.  In the event Plaintiffs continue to encounter difficulties with filing documents in this case, they may renew their request for an order enjoining IDOC employees from further interference with court access.

The Court will also order that the copying and postage costs for the lawsuit be divided between the two Plaintiffs.  Plaintiff Pausch will be directed to pay one-half of the filing fee for the Complaint in this action within twenty (20) days of the date of this Order.  Other than these limited orders, the Court will deny Plaintiffs' request for temporary injunctive relief.  These orders pertain only to the present action, and will terminate upon the completion of this lawsuit or by a subsequent order.

### D.  Scheduling Order

The following pre-trial schedule shall govern this case:

1. **<u>Completion of Discovery and Requests for Subpoenas:</u>**  All discovery shall be completed on or before **August 25, 2006.**  Discovery requests must be made far enough in advance to allow *completion* of the discovery in accordance with the applicable federal rules *prior* to this discovery cut-off date.  The Court is not involved in discovery unless the parties are unable to

**ORDER  12**

work out their differences as to the discovery themselves.  In addition, all requests for subpoenas duces tecum (production of documents by nonparties) must be made by **September 29, 2006.**  No requests for subpoenas duces tecum will be entertained after that date.

2. **Depositions**:   Depositions, if any, shall be completed on or before **August 25, 2006.**  If Defendants wish to take the deposition of Plaintiffs or other witnesses who are incarcerated, leave to do so is hereby granted.  Any such depositions shall be preceded by ten (10) days written notice to all parties and deponents.  The parties and counsel shall be professional and courteous to one another during the depositions.  If Plaintiffs decide to take depositions, they must file a motion requesting permission to do so.  They must also demonstrate their ability to comply with the applicable Federal Rules of Civil Procedure by providing the names of the proposed persons to be deposed, the name and address of the court reporter who will take the deposition, the estimated cost for the court reporter's time and transcription, and the source of funds for payment of the cost.

3. **Disclosure of Experts**:  Plaintiffs shall disclose all expert witnesses and the expected testimony of those witnesses by **June 2, 2006.**  Defendants shall disclose all expert witnesses by **June 30, 2006.**  *See* Fed. R. Civ. P. 26 and Local Rule 26.2.  All rebuttal expert witnesses shall be disclosed by **July 21, 2006.**

4. **Dispositive Motions:**  All motions for summary judgment and other potentially dispositive motions shall be filed with accompanying briefs on or before **October 13, 2006.**  Responsive briefs to such motions shall be filed within thirty (30) days after service of motions.  Reply briefs, if any, shall be filed within fourteen (14) days after service of responses.  All motions, responses, and replies shall conform to Rule 7.1 of the Local Rules for the District of Idaho.  **Neither party shall file supplemental responses, replies, affidavits, or other filings not authorized by the Local Rules without prior leave of Court.  No motion or memorandum, typed or handwritten, shall exceed 20 pages in length.**

**ORDER  13**

## III.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

1. Defendants' Motion for Protective Order (Docket No. 13) is GRANTED as set forth above.

2. Plaintiffs' Motion to Compel (Docket No. 14) is DENIED without prejudice.

3. Plaintiffs' Motion for Summary Judgment (Docket No. 15) is DENIED.

4. Plaintiffs' Motion for Preliminary Injunction (Docket No. 19) is DENIED in part and GRANTED in part as set forth above.

5. Plaintiffs' Motion to Strike and Dismiss Defendants' Answer (Docket No. 21, all parts therein) is DENIED.

DATED: **March 14, 2006**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

**ORDER  14**